The Carthage Turnpike Company v. Andrews.

---

No. 11,868.

THE CARTHAGE TURNPIKE COMPANY v. ANDREWS.

CONTINUANCE.—*Absent Witness Incompetent.*—A continuance should not be granted for the absence of a witness, who if present would not be competent to testify if objected to; *e. g.*, a physician whose knowledge of the facts came to him in his professional capacity.

EVIDENCE.—*Opinions.*—*Non-Expert Witness.*—A witness, not an expert, is competent to give an opinion as to the health and physical condition of another, based upon facts within his personal knowledge, which should first be stated. For reference to many authorities on the subject see opinion.

SAME.—*Declarations as to Injuries.*—Statements and complaints made by a party injured as to his sufferings and symptoms at the time, whether made to his surgeon or to others, are competent evidence in his behalf in a suit to recover for his injuries.

SAME.—*Damages.*—In a suit for personal injury, where the complaint avers that the plaintiff was a physician, and by reason of the injury is unable to follow his profession, it is competent to prove these facts, and also what his practice prior to the injury was worth; also the extent of his injury and its probable duration.

MEASURE OF DAMAGES.—*Personal Injury.*—*Case Followed.*—*City of Indiana-*

*polis* v. *Gaston,* 58 Ind. 224, announces a correct rule for the measure of damages in a suit for personal injury.

EXCESSIVE DAMAGES.—Ten thousand dollars will not be held excessive damages by the Supreme Court for personal injury to a physician whose professional earnings were two thousand dollars per annum, and who suffered greatly, was rendered permanently unable to practice afterwards, and must sooner or later die from the injury.

From the Henry Circuit Court.

*C. G. Offutt, R. A. Black, J. H. Mellett, E. H. Bundy, W. A. Cullen, B. L. Smith* and *W. J. Henley,* for appellant.

*J. A. New* and *J. W. Jones,* for appellee.

ZOLLARS, J.—One of appellant's bridges, over which appellee was driving, broke and fell, and he was thereby injured. He brought this action to recover damages, charging appellant with negligence in not maintaining the bridge in a proper and safe condition.

Besides the allegations of other injuries received, it is averred in the complaint that appellee's spine was so permanently injured that he can not, nor will he ever be able to, follow his profession as a practicing physician.

Appellant predicates one of its assignments of error upon the overruling by the court below of its motion for a continuance.

In the affidavit filed in support of the motion it is stated that it is expected to prove by an absent witness, that prior to the injuries complained of appellee was "afflicted with spinal disease and trouble, of the same character now alleged in said complaint to have been caused by said alleged injury, and to such an extent that said plaintiff claimed and alleged to said witness that he was unable to practice his profession, and would have to abandon it."

It is further stated in the affidavit, "that said witness is a physician, and prior to said alleged injury to the plaintiff, was consulted as such physician by said plaintiff in regard to his said spinal affection and disease," etc.

Aside from the question that might have been made here,

that the affidavit is not in the record, not having been brought into it by bill of exceptions or order of court, and aside from other objections to the affidavit, some of which are, perhaps, well taken, the objection that the absent witness is shown to be incompetent to testify to the facts alleged to be within his knowledge, is a fatal objection.   It is clearly shown by the affidavit that all the information the absent witness has is what came to him as the physician of appellee; such information can not be divulged by the physician as a witness. *Masonic Mut. Benefit Ass'n* v. *Beck,* 77 Ind. 203 (40 Am. R. 295); *Excelsior Mut. Aid Ass'n, etc.,* v. *Riddle,* 91 Ind. 84; *Penn Mut. L. Ins. Co.* v. *Wiler,* 100 Ind. 92.

Appellee, probably, might have waived the point, and allowed his physician to testify, but we can not indulge the presumption that he would have done so in order to overthrow the ruling of the court below, especially when he resisted the continuance, and argues here the incompetency of the witness to testify to the facts stated in the affidavit for continuance.

It is argued at length by appellant's counsel, that the motion for a new trial should have been sustained, because of the admission of improper testimony by the trial court.

It is urged on the part of appellee that no such question is before us, because the record does not show that proper objections were made and exceptions saved. In some instances that is so, and without extending this opinion to point out the instances where such is the case, we notice the points in the argument where the objections and exceptions seem to have been properly made and saved.

James O. Butler, one of appellee's witnesses, testified that he had known him since his boyhood, and had seen him frequently, and during the five years preceding the trial had lived near him. After having stated this, the following questions, over appellant's objections, were put to the witness by appellee's counsel, and the following answers made, viz.:

"Question. What has been his health and physical condition from the time you have known him up to the time of

his injury? Answer. Why, his health up to that time was good; he seemed to be stout and hearty, so far as I know.

" Ques. What was his physical appearance? Ans. Why, he appeared to be stout and hearty.

" Ques. Was there any other appearance? Ans. He was a good, sound-looking man, with some life about him.

" Ques. How was he as to flesh before this injury? Ans. He was fleshy; a good deal fleshier than he is now.

" Ques. How was he as to weight? Ans. He was a good deal heavier than he is now; he used to weigh from one hundred and eighty to one hundred and eighty-five pounds.

" Ques. Since the injury what has been the condition of his health? Ans. He has had but very poor health.

" Ques. What has been his physical appearance? Ans. He has been very weak and slow; he does not seem like the same man hardly, in physical strength.

" Ques. How as to his flesh and weight since the injury? Ans. Well, he has fallen off considerably.

" Ques. What changes, if any, have you observed in the expression of his countenance? Ans. He did not look like the same man hardly; that is, to the best of my knowledge; he did not seem to notice things like he used to."

James Anderson, another of appellee's witnesses, testified that he had known him intimately and seen him often during the last twenty-four years. After having thus testified, the following questions, over appellant's objections, were propounded to the witness, to which he made the following answers:

" Question. What was his physical condition as to health up to the time of the injury? Answer. Well, his appearance looked like he might be a stout man; I always supposed he was from his appearance; of course, I am no doctor; he had a healthy look.

" Ques. What was his condition as to health and physical condition on yesterday? Ans. Why, he looked very much worn down to what he was the last time I saw him."

The substance of the testimony of these witnesses, taken as a whole, is that from their long and intimate acquaintance with appellee, from their observations of him, and his physical appearance, certain characteristics of which they gave, in their judgment, he was a stout and healthy man before the injury, and sick and not so stout thereafter. Taken as a whole, the most that can be fairly said is that the testimony amounts to the opinions of the witnesses, based upon their observation and the facts stated.

It would have been more orderly to have drawn out all of the statements of the witnesses before asking their judgment or opinion, but as the jury were put in possession of the facts as a part of the testimony in chief, it would seem that the manner and order in which it was done ought not to be fatal to appellee's case. It should be observed, too, that the objections below were not that the witnesses had not stated the facts upon which they based their opinions. The objections were broad and general ones, that the witnesses could not give their opinion, because they were not experts.

Regarding the testimony as we think it should be regarded, it is brought within the general rule that non-expert witnesses may give their opinions, if they state, as far as possible, the facts and observations upon which they are based. That non-expert witnesses may thus give their opinions is well settled by the adjudications of this court. *House* v. *Fort*, 4 Blackf. 293; *City of Indianapolis* v. *Huffer*, 30 Ind. 235; *Benson* v. *McFadden*, 50 Ind. 431; *Holten* v. *Board*, etc., 55 Ind. 194; *Coffman* v. *Reeves*, 62 Ind. 334; *State, ex rel.*, v. *Newlin*, 69 Ind. 108; *Mills* v. *Winter*, 94 Ind. 329.

That a non-expert may give an opinion at all, is the rule of necessity. He must, in all cases, so far as possible, state the facts upon which he bases his opinions. When the case is one in which all the facts can be presented to the jury, then no opinion can be given, because the jury are as well qualified as the witness to form a conclusion. But there are cases where the witness can not put before the jury, in an in-

telligible and comprehensible form, the whole ground of his judgment or opinion. When questions as to the conditions of the mind and body are the questions in issue, there are often many things in the acts, deportment and appearance of the party which create a fixed and reliable judgment in the mind of the observer that can not be conveyed in words to the jury. That a person appears to be sad or sick may well be known by observation, and yet there is no way to describe the appearance except by the words that necessarily embody the conclusion reached by observation. In such cases, if the witness states that he is acquainted with, has had opportunity to, and has observed the party, this, it has been held, is sufficient to render the witness competent to state the condition of the party mentally or physically. The weight to be given to such evidence, of course, will depend upon the intelligence of the witness, the intimacy of his acquaintance with the party, and upon other things that may appear by the examination in chief, and by a cross-examination. *Bennett* v. *Meehan*, 83 Ind. 566 (43 Am. R. 78), and cases there cited.

In this case the court quoted with approval from 1 Whart. Ev., section 512: "So an opinion can be given by a non-expert as to matters with which he is specially acquainted, but which can not be specifically described." *Loshbaugh* v. *Birdsell*, 90 Ind. 466. In this case, the court quoted with approval from 1 Greenl. Ev., section 440, as follows: "Non-experts may give their opinions on questions of identity, resemblance, apparent condition of body or mind, intoxication, insanity, sickness, health, value, conduct, and bearing, whether friendly or hostile, and the like." The same quotation was made with approval in the case of *Johnson* v. *Thompson*, 72 Ind. 167 (37 Am. R. 152). See, also, *Yost* v. *Conroy*, 92 Ind. 464 (47 Am. R. 156); *Indiana, etc., R. W. Co.* v. *Hale*, 93 Ind. 79; *Goodwin* v. *State*, 96 Ind. 550; *Hamm* v. *Romine*, 98 Ind. 77; *Wilkinson* v. *Mosely*, 30 Ala. 562; *Blackman* v. *Johnson*, 35 Ala. 252; *South and North Ala. R. R. Co.* v. *McLendon*, 63 Ala. 266; *Chicago, etc., R. R. Co.*

v. *George,* 19 Ill. 510; *Willis* v. *Quimby,* 11 Foster (N. H.) 485; *Elliott* v. *Van Buren,* 33 Mich. 49 (20 Am. R. 668); *Culver* v. *Dwight,* 6 Gray, 444; *Irish* v. *Smith,* 8 S. & R. 573; *Parker* v. *Boston, etc., Co.,* 109 Mass. 449; Best Prin. Ev. 494; *Commonwealth* v. *Sturtivant,* 117 Mass. 122 (19 Am. R. 401); *Evans* v. *People,* 12 Mich. 27; Abbott Trial Ev. 599, 600. Under our own cases, and those above cited, some of which carry the rule further than it is necessary for us to extend it here, the testimony objected to was competent.

Physicians were allowed to testify to declarations and complaints made to them by appellee as to his sufferings when they were examining and treating him for the injuries. Other witnesses were allowed to give the declarations and complaints of appellee to them in relation to his loss of sleep, appetite and taste, freezing in summer time, and sufferings in other respects.

These declarations and complaints were made at various times from the receiving of the injury until the bringing of the action. They were not by way of narrations of past sufferings, but had reference to the times when made. This evidence, we think, was competent and proper. For whatever appellee may have suffered mentally or physically during the period from the injury, as well as for the permanent loss of health, he is entitled to recover, if he is entitled to recover at all. And to show the extent of the suffering, his declarations and complaints at the time, or at any one time, are competent. How much weight should be given to such declarations, is a question for the jury. This court has approved the following from 1 Greenl. Ev., section 102: "Wherever the *bodily or mental* feelings of an individual are material to be proved, the usual expressions of such feelings, made at the time in question, are also original evidence. If they were the natural language of the affection, whether of body or mind, they furnish satisfactory evidence, and often the only proof of its existence. And whether they were real or feigned is for

the jury to determine." See cases cited in the foot notes. *Town of Elkhart* v. *Ritter*, 66 Ind. 136 ; 1 Phillip's Ev. 180, 182 ; Abbott Trial Ev. 599, and notes ; *Rogers* v. *Crain*, 30 Texas, 284 ; *Elliott* v. *Van Buren, supra.* And so, too, it was proper for appellee to testify as to his suffering, and the manner and various ways in which he was disabled and made to suffer by the injuries received.

In both paragraphs of the complaint it is averred that appellee has been a practicing physician, and that by the injuries received he has been rendered permanently unable to follow his profession, to his damage. Under these averments it was competent for him to prove what his practice had been worth prior to the injuries, and that by the injuries he was rendered permanently unable to follow his profession. *Town of Elkhart* v. *Ritter, supra; City of Logansport* v. *Justice,* 74 Ind. 378 (39 Am. R. 79); *South and North Ala. R. R. Co.* v. *McLendon, supra;* Abbott Trial Ev. 598.

It was also competent for the attending physicians to testify as to the character and extent of the injuries, their probable duration, and that they would disqualify appellee to follow his profession. This was one of the material questions in the case, and could in no way be so readily and safely determined as by the testimony of physicians, who are supposed to be competent to form a more correct judgment upon such matters than the jury could, without the aid of such testimony. Abbott Trial Ev. 600, and cases cited ; *City of Indianapolis* v. *Gaston,* 58 Ind. 224.

By the motion for a new trial the question was made below, and is urged here, that the trial court erred in giving the seventh instruction. The main objection urged against the instruction is that it did not lay down a correct rule for the measure of damages. With but one or two unimportant changes, it is an exact copy of an instruction (No. 11) approved in the case of *City of Indianapolis* v. *Gaston, supra.* That case is sufficient authority in support of the instruction.

No plausible objection can be made that the instruction is not applicable to the evidence under either paragraph of the complaint.

The verdict and judgment rest upon evidence which tends to sustain them, and hence this court can not overthrow them upon the weight of the evidence.

The question is made and urged with much earnestness that the damages are excessive. Ten thousand dollars was awarded by the jury; but in view of appellee's injuries we do not feel that this court should pronounce that amount excessive. The evidence shows that appellee has suffered much, that he has been rendered permanently unable to practice his profession, which, prior to the injuries, brought to him $2,000 per year, and that the injuries are such as will sooner or later result in death. *Town of Westerville* v. *Freeman,* 66 Ind. 255.

That appellant may not be a wealthy corporation can no more influence courts than if it were wealthy. The question in such cases is, not the financial ability of the wrong-doer, but the damages to the injured party.

After an examination of the several questions discussed by counsel, we have reached the conclusion that there is no error in the record for which the judgment should be reversed. It is, therefore, affirmed, with costs.

Filed May 26, 1885.